IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JOHNNIE CARTER                                                                    PLAINTIFF

V.                          CASE NO. 4:16-CV-00068 JTK

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION                                                                    DEFENDANT

## ORDER

### I.  Introduction:

Plaintiff, Johnnie Carter, applied for disability benefits on January 23, 2013, alleging a disability onset date of September 15, 2009. (Tr. at 11). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 21). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Carter has requested judicial review.

For the reasons stated below, the Court[1] reverses the ALJ's decision and remands for further review.

### II.  The Commissioner's Decision:

The ALJ found that Carter had not engaged in substantial gainful activity since the amended onset date of January 1, 2013. (Tr. at 13). The ALJ found, at Step Two of the sequential five-step analysis, that Carter had the following severe impairments: degenerative disc disease of the lumbar spine, hypertension, bipolar disorder, and history of alcohol abuse. *Id.*

At Step Three, the ALJ determined that Carter's impairments did not meet or equal a listed

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

impairment. (Tr. at 14). Before proceeding to Step Four, the ALJ determined that Carter had the residual functional capacity ("RFC") to perform medium work except that he is limited to jobs involving simple tasks and simple instructions. (Tr. at 16). Next, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Carter's age, education, work experience and RFC, Carter was capable of performing past relevant work. (Tr. at 21). Based on that determination, the ALJ held that Carter was not disabled. *Id.*

## III. Discussion:

### A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

### B. Carter's Arguments on Appeal

Carter argues that substantial evidence does not support the ALJ's decision to deny benefits. He contends that: 1) the ALJ committed reversible error in failing to find Carter's cervical and thoracic degenerative disc disease, personality disorder, and organic brain disorder to be severe impairments; 2) the ALJ erred in his evaluation of medical opinions; 3) the RFC was not

based on substantial evidence; and 4) the ALJ failed to consider or address Carter's consistently low Global Assessment of Functioning ("GAF") scores. For the following reasons, the Court finds that the ALJ's RFC determination is not supported by substantial evidence, and therefore, remand is proper.

Due to bipolar disorder and alcohol abuse, Carter required four inpatient hospitalizations: February 12-13, 2013; March 12-17, 2013; April 6-9, 2013; and May 21-24, 2013. (Tr. at 652-665, 722, 776-777, 812). He presented to the ER on those occasions for suicidal ideation, having attempted suicide numerous times. He exhibited severe depression, delusions, hopelessness and despair over relationship issues, and severe anger. (Tr. at 675). At intake in May 2013, he had a blunted affect with homicidal ideation, visual hallucinations, and limited insight and judgment. (Tr. at 792-3). Carter reported that he had frequent anger episodes that cost him jobs and friends. He lost at least one job for not getting along with supervisors. (Tr. at 43).

In spite of these repeated hospital stays, the ALJ opined that Carter had "experienced no episodes of decompensation of extended duration," and therefore, only had mild mental limitations. (Tr. at 15). The ALJ reasoned that Carter's mental impairments improved when he got sober. *Id.* There is no further discussion by the ALJ of his alcohol dependency, although it is listed as a severe impairment.

The regulations require an ALJ to determine whether a claimant's "drug addiction or alcoholism is a contributing factor material to the determination of disability." *Jackson v Apfel*, 162 F.3d 533, 537 (8th Cir. 1998). The key factor is "whether [the Commissioner] would still find [a claimant] disabled if he stopped using drugs or alcohol." *Id*. The ALJ observed that since Carter stopped drinking in March 2014, he still has mood swings, bouts of depression, and

difficulty getting along with others. (Tr. at 17). The ongoing psychiatric symptoms in the absence of alcohol suggest that alcohol is not a "contributing factor" to disability; that is, removing alcohol would not remove the depression, suicidal ideations, or hospitalizations. Alcohol abuse certainly precipitated hospital visits, but the ALJ has not convinced the Court that without it Carter would resume a normal life with only minimal limitations.

The ALJ did note that Carter did not seek professional psychiatric care other than hospitalizations, and Carter explained that he could not afford treatment. Because of the paucity of mental health records, the review by state-agency medical consultants becomes critical to Carter's case. Dr. Stephen P. Nichols, Ph.D., saw Carter on March 28, 2013. He noted Carter was quite forgetful and confused. (Tr. at 773). Dr. Nichols concluded that, due to severe depression and chronic alcoholism, Carter's ability to cooperate with supervisors and coworkers was impaired, as was his ability to cope, concentrate, and sustain persistence. *Id*. This opinion mirrors the reports of two non-examining state consultants. On April 10, 2013 and September 30, 2013, those consultants both determined that Carter's work would require that interpersonal contact be incidental to the work performed; the complexity of tasks be learned and performed by rote, with few variables and little judgment; and supervision be simple, direct, and concrete. (Tr. at 68, 103). The ALJ gave those consultant opinions some weight, and Dr. Nichols' opinion little weight, finding that overall, the opinions were not supported by the medical evidence. Again, there is scant psychiatric treatment evidence, so the ALJ did not have much else to rely on, and his dismissal of the psychiatric opinions does not hold up. Indeed, the ALJ's assigned RFC does not reflect the above opinions; he only limited Carter to simple work, without further elaboration. The non-examining consultants set forth very specific RFC language ("incidental interpersonal

4

contact" and "simple, direct, and concrete supervision"), but the ALJ ignored it.

An RFC represents the most a claimant can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's [RFC], the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of [his] impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The ALJ bears the primary responsibility for assessing a claimant's "residual functional capacity" – that is, what he can still do, in spite of severe impairments. The finding must be based on all relevant evidence in the record. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010). The ALJ's mental RFC determination is not reflective of the three opinions of record and the supporting medical evidence, and thus, he did not meet his burden.

The ALJ also ignored an examining consultant opinion with respect to Carter's lumbar impairment. Dr. Robert C. Karas, M.D., examined Carter on September 10, 2013. (Tr. at 703). He had access to lumbar and cervical CT scans from November 2, 2012, which revealed foraminal narrowing, spurring, facet hypertrophy, disc space narrowing, and central canal stenosis. (Tr. at 469). Upon exam, Dr. Karas noted that Carter's gait was slow and wide, and that he was very weak when arising from a squatting position. (Tr. at 702). He concluded that Carter would be moderately to severely limited in walking, carrying, lifting, and standing. (Tr. at 703). The ALJ ignored this clinical finding, stating that it was not well-supported by the medical evidence. However, the two non-examining state consultants also found similar limitations and assigned a light work RFC. (Tr. at 66, 101). Without offering medical opinions that contradicted this

evidence, the ALJ likewise dismissed these conclusions and assigned a medium exertional level RFC instead. He did not apply any postural limitations to the RFC. The cervical and lumbar CT scans are specific objective evidence, which support the conclusions of state doctors that Carter had significant postural limitations. The ALJ erred in ignoring these conclusions.

The ALJ may not draw his own medical inferences without citing supporting evidence, and there is simply no contradictory medical opinion that would give good reason for the ALJ to grant so little weight to all six of the state consultants. The RFC, both mental and physical, is unsupported by substantial evidence in the record as a whole.

## IV. **Conclusion:**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ ignored crucial evidence in determining Carter's RFC, and therefore, erred in that RFC finding. The decision is hereby reversed and the case remanded with instructions for further review.

IT IS SO ORDERED this 3rd day of May, 2017.

_____
UNITED STATES MAGISTRATE JUDGE